UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL D. WALL, | |
| Petitioner, | |
| v. | No. 3:23 CV 787 |
| WARDEN, | |
| Respondent. | |

OPINION and ORDER

Michael D. Wall, a prisoner without a lawyer, filed a habeas corpus petition under 28 U.S.C. § 2254 challenging his 2009 drug conviction in Elkhart County under Case No. 20C01-0607-FA-58. (DE # 1.) Pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the court must review the petition and dismiss it "[i]f it plainly appears . . . that the petitioner is not entitled to relief[.]"

Wall was convicted of dealing in methamphetamine weighing three or more grams. *Wall v. State*, 917 N.E.2d 189 (Table), 2009 WL 4164074 (Ind. Ct. App. 2009). The Indiana Court of Appeals summarized the facts underlying his conviction as follows:

> [O]n November 30, 2005, officers from the Elkhart County Interdiction and Covert Enforcement Unit (the ICE) met with a person (hereinafter, "the source") cooperating with the ICE who was to purchase methamphetamine from Wall. The group proceeded to the Christiana Creek Country Club in Elkhart, where undercover Goshen Police Department Officer Brooks Germann was to accompany the source in the drug transaction with Wall. Germann knew Wall because, nine days before, he and the source had purchased from Wall what they believed was methamphetamine. It turned out, however, that the substance did not test positive for methamphetamine in the previous buy. In the instant case, after the officers searched the source and his truck, Germann and the source drove to Christiana Creek Country Club. They arrived at the country club at approximately 6:30 p.m. and Wall

arrived shortly thereafter. Wall approached Germann, who was seated in the passenger side of the truck, and produced two small plastic bags containing what he claimed was "ice", meaning a pure form of methamphetamine. Wall and Germann discussed whether the drugs in this buy were of better quality than those purchased nine days before. Wall claimed he had switched suppliers and assured Germann this buy contained better quality drugs. Wall also told Germann that he could procure more drugs for Germann within fifteen minutes after receiving a phone call making the request. Germann paid Wall $400 for the methamphetamine.

After the transaction was completed, Germann and the source drove away and met with the other officers, after which Germann returned to the ICE office. A field test on the substance purchased proved inconclusive. Thereafter, Germann placed the two small plastic bags containing the substance purchased from Wall in a plastic evidence bag, sealed the evidence bag with blue tape, wrote his badge number across the tape, and then placed it in a secure locker. The following day, Germann transported this evidence bag to a lab at Andrews University in Berrien County, Michigan.

The lab weighed the contents of the two plastic bags. The contents of one bag weighed 3.390 grams, while the contents of the other weighed 3.398 grams for an aggregate weight of 6.788 grams. The lab also performed tests on samples taken from the contents of each of the plastic bags Wall sold to Germann. Both samples tested positive for methamphetamine. The State charged Wall with dealing methamphetamine weighing three (3) grams or more, as a class A felony. He was found guilty as charged following a jury trial.

*Id.* at *1 (internal citations omitted). Based on his criminal record and other aggravating factors, including that the offense occurred in close proximity to a school, he was sentenced to a 40-year prison term. *Id.* at *2.

He appealed, arguing that the evidence was insufficient to support his conviction, that his sentence was unduly long, and that the trial court erred in calculating his pretrial jail credits. *Id.* at *1. In November 2009, the Indiana Court of Appeals rejected these arguments and affirmed his conviction. *Id.* at *2-4. He did not seek transfer to the Indiana Supreme Court, nor did he seek review in the U.S. Supreme Court. (DE # 1 at 1.)

In December 2010, he filed a pro se post-conviction petition in state court. *State v. Wall*, 20C01-1012-PC-00024 (Elkhart Cir. Ct. closed Dec. 16, 2011). The public defender was appointed to represent him but subsequently withdrew. *Id.* In December 2011, the court granted his request to withdraw his petition without prejudice. *Id.* In March 2013, he refiled his post-conviction petition. *Id.* He later sought leave to withdraw the petition a second time, and the court granted this request in February 2014. *Id.* He did not file an appeal or pursue any other collateral attack on his conviction. (DE # 1 at 2.)

In August 2023, he filed this federal petition asserting three claims. His petition is somewhat difficult to parse, but giving it liberal construction he claims: (1) he was arrested without probable cause in violation of the Fourth Amendment because the results of the field test were inconclusive; (2) he was entitled to assert an entrapment defense because it was the officers who suggested the meeting location, which was near a school; and (3) the court considered improper aggravating factors in imposing his sentence.[1] (DE # 1 at 3-4.)

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") contains a strict statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

---

[1] It is not evident that the petition contains a viable federal claim. Fourth Amendment claims ordinarily are not cognizable on federal habeas review, absent a subversion of the hearing process in the state courts, which Wall does not allege. *Stone v. Powell*, 428 U.S. 465 (1976); *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013). His other two claims appear to be premised on violations of state law, which is not a basis for granting him federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Because the petition does not satisfy the threshold requirement of timeliness, the court does not explore these matters further.

3

>(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

Applying those provisions here, Wall asserts routine—rather than newly recognized— claims based on events occurring prior to trial and at sentencing. He does not assert that a state-created impediment prevented him from filing his federal petition on time. The Indiana Court of Appeals affirmed his conviction in November 2009, and he did not seek further review. (DE # 1 at 1.) His conviction became final under 28 U.S.C. § 2244(d)(1)(A) when the time for seeking review in the Indiana Supreme Court expired. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (for habeas petitioners who do not complete all levels of review, the judgment becomes final when the time for seeking further review expires). At that time, petitions to transfer had to be filed within 30 days of the appellate court's judgment. IND. R. APP. 57(C) (eff. Jan. 1, 2008, to Dec. 13, 2018).

The federal clock thus began running on December 26, 2009, and he had one year from that date to file a timely federal petition. He filed a state post-conviction petition on

December 2, 2010, which tolled the federal deadline under 28 U.S.C. § 2244(d)(2). He was granted leave to withdraw his post-conviction petition in December 2011, and the federal clock began running again. At that point, he had less than a month left to file a timely federal petition. He did not file a federal petition within that deadline, and also had nothing pending in state court until March 2013, when he refiled his post-conviction petition. He withdrew the post-conviction petition a second time in February 2014, and then waited almost a decade to file his federal petition. The petition is therefore untimely by several years.

When asked to explain why his petition is timely under the provisions of AEDPA, Wall states simply "newly discovered evidence." (DE # 1 at 5.) He does not explain what this evidence is or exactly when he discovered it, but elsewhere in his petition he states that this "evidence" was found "thr[ough] research" on his "GTL tablet" using "Nexus Lexis." (*Id.* at 3.)

Although unclear, he may be trying to invoke the "actual innocence" exception. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" to obtain review of his claims even though they are procedurally defaulted or untimely. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). To raise a credible claim of actual innocence, the petitioner must have "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]" *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (a

petitioner claiming actual innocence "must have documentary, biological (DNA) or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim"). The petitioner must demonstrate that in light of this new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. This standard is demanding and can be met only in "extraordinary" circumstances. *House v. Bell*, 547 U.S. 518, 538 (2006).

Wall does not point to any new evidence—much less powerful or reliable evidence—to demonstrate that he is factually innocent of dealing methamphetamine. As best as can be discerned, he is claiming that he has discovered case law to support a legal challenge to his conviction. Even if he is correct, this would not demonstrate his *factual* innocence. *Bousley*, 523 U.S. at 623. He has not made a credible showing of actual innocence.

Alternatively, he may be invoking statutory tolling under 28 U.S.C. § 2244(d)(1)(D), which provides that a claim must be filed within one year of the date "on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Again, he does not clearly identify what "factual predicate" he discovered; as stated above, he appears instead to be referring to legal research he conducted on his tablet. Assuming he discovered new facts to support one or more of his claims, he does not provide the date when he discovered them. Because "the clock . . . starts at the time a reasonable person would have discovered those facts," he also must show that he could not reasonably have discovered them any earlier. *Villanueva v.*

6

*Anglin*, 719 F.3d 769, 774 (7th Cir. 2013). However, he provides no information from which the court could conclude that he acted diligently in discovering some new facts or that he filed his petition within one year of discovering them. He is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(1)(D).

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must consider whether to grant or deny Wall a certificate of appealability. As stated, his petition is untimely by several years and he does not make a credible argument for excusing its untimeliness. The court finds no basis to conclude that reasonable jurists would debate the correctness of this ruling or find a reason to encourage him to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, he will not be granted a certificate of appealability.

For these reasons, the court **DISMISSES** the petition (DE # 1) pursuant to Rule 4 of the Rules Governing Section 2254 Cases and **DENIES** the petitioner a certificate of appealability. The Clerk is **DIRECTED** to close this case.

**SO ORDERED.**

Date: September 28, 2023

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT